# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RUSH SPINKS, JR.,<br><br>  Plaintiff,<br><br>  v.<br><br>E. LOPEZ,<br><br>  Defendant.<br>_____/ | Case No. 1:10-cv-01886-AWI-SKO PC<br><br>FINDINGS AND RECOMMENDATIONS RECOMMENDING PLAINTIFF'S MOTION FOR THE APPOINTMENT OF AN EXPERT WITNESS BE DENIED AND DEFENDANT'S MOTION FOR SUMMARY JUDGMENT BE GRANTED<br><br>(Docs. 41 and 62)<br><br>OBJECTION DEADLINE: TWENTY-FIVE DAYS |

## I.   **Procedural History**

Plaintiff Rush Spinks, Jr. ("Plaintiff"), a state prisoner proceeding pro se and in forma pauperis, filed this civil rights action pursuant to 42 U.S.C. § 1983 on October 12, 2010. This action is proceeding against Defendant E. Lopez ("Defendant") for interfering with Plaintiff's post-operative medical treatment on September 1, 2008, in violation of the Eighth Amendment of the United States Constitution.

On July 31, 2013, following the close of discovery, Defendant filed a motion for summary judgment. Fed. R. Civ. P. 56. (Doc. 41.) Plaintiff filed an opposition on August 26, 2013. (Docs. 42-45.) After obtaining an extension of time, Defendant filed a reply on September 24, 2013, along with a notice of errata regarding declarations submitted in support of her motion for summary judgment. (Docs. 47-49.)

Defendant's motion for summary judgment has been submitted upon the record without oral argument, and for the reasons set forth below, the Court recommends that her motion be granted.[1]  Local Rule 230(*l*).

## II. <u>**Legal Standard**</u>

Any party may move for summary judgment, and the Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a) (quotation marks omitted); *Washington Mutual Inc. v. U.S.*, 636 F.3d 1207, 1216 (9th Cir. 2011).  Each party's position, whether it be that a fact is disputed or undisputed, must be supported by (1) citing to particular parts of materials in the record, including but not limited to depositions, documents, declarations, or discovery; or (2) showing that the materials cited do not establish the presence or absence of a genuine dispute or that the opposing party cannot produce admissible evidence to support the fact.  Fed. R. Civ. P. 56(c)(1) (quotation marks omitted).  The Court may consider other materials in the record not cited to by the parties, but it is not required to do so.  Fed. R. Civ. P. 56(c)(3); *Carmen v. San Francisco Unified School Dist.*, 237 F.3d 1026, 1031 (9th Cir. 2001); *accord Simmons v. Navajo County, Ariz.*, 609 F.3d 1011, 1017 (9th Cir. 2010).

Defendant does not bear the burden of proof at trial and in moving for summary judgment, she need only prove an absence of evidence to support Plaintiff's case.  *In re Oracle Corp. Securities Litigation*, 627 F.3d 376, 387 (9th Cir. 2010) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548 (1986)).  If Defendant meets her initial burden, the burden then shifts to Plaintiff "to designate specific facts demonstrating the existence of genuine issues for trial."  *In re Oracle Corp.*, 627 F.3d at 387 (citing *Celotex Corp.*, 477 U.S. at 323).  This requires Plaintiff to "show more than the mere existence of a scintilla of evidence."  *Id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S.Ct. 2505 (1986)).

---

[1] Concurrently with her motion for summary judgment, Defendant served Plaintiff with the requisite notice of the requirements for opposing the motion.  *Woods v. Carey*, 684 F.3d 934, 939-41 (9th Cir. 2012); *Rand v. Rowland*, 154 F.3d 952, 960-61 (9th Cir. 1998).

In judging the evidence at the summary judgment stage, the Court may not make credibility determinations or weigh conflicting evidence, *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007) (quotation marks and citation omitted), and it must draw all inferences in the light most favorable to the nonmoving party and determine whether a genuine issue of material fact precludes entry of judgment, *Comite de Jornaleros de Redondo Beach v. City of Redondo Beach*, 657 F.3d 936, 942 (9th Cir. 2011) (quotation marks and citation omitted), *cert. denied*, 132 S.Ct. 1566 (2012). The Court determines only whether there is a genuine issue for trial, and Plaintiff's filings must be liberally construed because he is a pro se prisoner. *Thomas v. Ponder*, 611 F.3d 1144, 1150 (9th Cir. 2010) (quotation marks and citations omitted).

### III. Plaintiff's Motion for Appointment of Expert Witness

On November 18, 2013, following the submission of Defendant's motion for summary judgment on the record, Local Rule 230(*l*), Plaintiff filed a motion seeking the appointment of an impartial expert witness, Fed. R. Evid. 706. Defendant filed an opposition on January 7, 2014. Given the untimeliness of the opposition and the absence of any request for leave to file a late opposition, the Court declines to consider the opposition and Plaintiff's motion is submitted without oral argument. Local Rule 230(*l*).

While the Court has discretion to appoint an expert witness and to apportion costs, including the apportionment of costs to one side, Fed. R. Evid. 706; *Ford ex rel. Ford v. Long Beach Unified School Dist.*, 291 F.3d 1086, 1090 (9th Cir. 2002); *Walker v. American Home Shield Long Term Disability Plan*, 180 F.3d 1065, 1071 (9th Cir. 1999), where the cost would likely be apportioned to the government, the Court should exercise caution. The Court's docket is comprised of an overwhelming number of civil rights cases filed by prisoners proceeding pro se and in forma pauperis, and the facts of this case are no more extraordinary and the legal issues involved no more complex than those found in the majority of the cases now pending before the Court. *Wilds v. Gines*, No. C 08-03348 CW (PR), 2011 WL 737616, at *4 (N.D. Cal. Feb. 23, 2011); *Honeycutt v. Snider*, No. 3:11-cv-00393-RJC (WGC), 2011 WL 6301429, at *1 (D. Nev. Dec. 16, 2011) ("The appointment of experts in deliberate indifference cases is rare, and such requests should be granted sparingly, particularly given the large volume of cases in which

1  indigent prisoners allege claims under the Eighth Amendment related to medical care, and the
2  substantial expense defendants may have to bear if courts were to appoint experts in such cases.")

3  Furthermore, Rule 706 is not a means to avoid the in forma pauperis statute and its
4  prohibition against using public funds to pay for the expenses of witnesses, *Manriquez v. Huchins*,
5  No. 1:09-cv-00456-LJO-BAM PC, 2012 WL 5880431, at *12 (E.D. Cal. Nov. 21, 2012)
6  (quotation marks and citations omitted), nor does Rule 706 contemplate court appointment and
7  compensation of an expert witness as an advocate for Plaintiff, *Faletogo v. Moya*, No. 12cv631
8  GPC (WMc), 2013 WL 524037, at *2 (S.D. Cal. Feb. 23, 2013) (quotation marks omitted).  The
9  appointment of an expert witness under Rule 706 is intended to benefit the trier of fact, not a
10 particular litigant, and here, the medical issue is not of such complexity that the Court requires the
11 assistance of a neutral expert.  *Faletogo*, 2013 WL 524037, at *2; *Bontemps v. Lee*, No. 2:12-cv-
12 0771 KJN P, 2013 WL 417790, at *3-4 (E.D. Cal. Jan. 31, 2013); *Honeycutt*, 2011 WL 6301429,
13 at *1; *Wilds*, 2011 WL 737616, at *4; *Gamez v. Gonzalez*, No. 08cv1113 MJL (PCL), 2010 WL
14 2228427, at *1 (E.D. Cal. Jun. 3, 2010).

15 Although Plaintiff acknowledges in his motion that the appointment of a neutral expert
16 witness is intended to assist the trier of fact rather than to advocate for him, it is nonetheless
17 apparent that Plaintiff seeks the appointment of an expert for the purpose of submitting a
18 competing expert opinion so as to create a triable issue of fact.  (Doc. 62, Motion, ¶3-5.)  That is
19 not the function of a neutral expert witness.  The issue in this case is whether Defendant acted with
20 deliberate indifference to Plaintiff's serious medical needs when she required him to return his sitz
21 bath basin on September 1, 2008, and the Court does not require neutral expert testimony to assist
22 it in determining whether there exist triable issues of fact precluding summary judgment.
23 *Montanez v. Gonzalez*, No. 1:10-cv-01931-AWI-BAM (PC), 2013 WL 6048132, *1 (E.D. Cal.
24 Nov. 14, 2013), *Brooks v. Tate*, No. 1:11-cv-01503-AWI-DLB PC, 2013 WL 4049043, at *1 (E.D.
25 Cal. Aug. 7, 2013).

26 Therefore, the Court recommends that Plaintiff's motion for the appointment of an
27 impartial expert witness be denied.
28 ///

**IV.     Defendant's Motion for Summary Judgment**

    **A.     Plaintiff's Claim**[2]

At the time of the events at issue, Plaintiff was incarcerated at California State Prison, Corcoran ("CSP-Corcoran"). Plaintiff filed suit on October 12, 2010, alleging that on August 25, 2008, he was transported to an outside hospital, where he underwent his third hemorrhoidectomy for a chronic and severe prolapsing hemorrhoid condition. Plaintiff's post-operative care included pain medication, a stool softener, and sitz baths. Upon Plaintiff's return to the prison on August 26, 2008, the prison hospital's ER nurse went over the instructions and assured him that adherence with the post-operative orders would not be a problem. Plaintiff subsequently went to the yard's medical clinic as directed, where he received a three-day lay-in and was told that the sitz bath basin had to be ordered. Plaintiff received the sitz bath basin on August 27, 2008.

On September 1, 2008, Plaintiff went to the medical clinic to receive his noon dose of pain medication and while he was there, Defendant appeared at the clinic window and informed him he needed to return the sitz bath basin because the order authorizing its use had expired. Plaintiff told Defendant that she was mistaken and only the pain medication ordered by the surgeon had expired.

After Plaintiff returned to his cell, a correctional officer said Defendant had called and Plaintiff was supposed to return the sitz bath basin to the medical clinic. Plaintiff explained that Defendant was mistaken and showed the officer the medical order, which supported Plaintiff's position. The officer then left to call Defendant, but he returned to Plaintiff's cell and said Defendant was insistent and he would need to take the basin from Plaintiff if Plaintiff would not return it himself.

---

[2] Plaintiff's complaint is verified and his allegations constitute evidence where they are based on his personal knowledge of facts admissible in evidence. *Jones v. Blanas*, 393 F.3d 918, 922-23 (9th Cir. 2004). The summarization of Plaintiff's claim in this section should not be viewed by the parties as a ruling that the allegations are admissible. The Court will address, to the extent necessary, the admissibility of Plaintiff's evidence in the sections which follow.

5

Plaintiff went back to the clinic with the basin, where he and Defendant argued over whether Plaintiff's order for the basin had expired or not. Plaintiff requested to keep the basin for another day until a doctor could straighten the matter out, due to pain and bleeding, but Defendant refused. Frustrated, Plaintiff impulsively threw the basin on the floor, where it bounced into Defendant's foot. Plaintiff was handcuffed and escorted to the program office, and he was subsequently moved from general population to administrative segregation. Plaintiff received a serious rules violation report ("RVR") for battery on a non-peace officer with a weapon.[3]

Plaintiff filed an inmate appeal on September 3, 2008, regarding the incident and he was given the sitz bath basin back on September 4, 2008.

**B.    Defendant's Undisputed Facts**

1. Plaintiff was incarcerated at CSP-Corcoran during the events relevant to this action.

2. Defendant was a licensed vocational nurse at CSP-Corcoran during the events relevant to this action.

3. Plaintiff underwent hemorrhoid surgery, which is also called a hemorrhoidectomy, at Corcoran District Hospital (CDH) on August 25, 2008.

4. Dr. Schuster, who was a doctor under contract with CSP-Corcoran at the time, performed Plaintiff's hemorrhoid surgery on August 25, 2008.

5. All hemorrhoid surgery patients will experience pain after the surgery.

6. The pain experienced by a hemorrhoid surgery patient decreases with each passing day.[4]

7. The pain experienced by a hemorrhoid surgery patient is expected to be considerably less on the seventh post-operative day than on the first post-operative day.[5]

8. A patient's pain after hemorrhoid surgery is controlled with oral narcotics and/or non-

---

[3] Although not material to resolution of Defendant's motion for summary judgment, Plaintiff was eventually convicted of battery on a non-prisoner after the hearing officer made a determination that the basin did not meet the criteria for an inmate weapon. (Pl. Ex. B-53.)

[4] Plaintiff's desire to add facts and/or address potential complicating factors does not suffice to bring this fact into dispute.

[5] Again, the desire to add facts and/or address potential complications does not suffice to bring this fact into dispute, and Plaintiff lacks the competency to testify on matters requiring medical expertise. Fed. R. Evid. 701, 702.

1  steroidal anti-inflammatory drugs, and topical analgesic creams and ointments.

2  9.     A stool softener is often prescribed after hemorrhoid surgery to prevent the passage of hard
3  stool during the post-operative period.

4  10.    The passage of hard stool can cause injury to the soft tissues at the surgical wound site and
5  thus impair the progress of wound healing, which can lead to delayed recovery and persistent pain.

6  11.    Plaintiff was discharged from CDH on August 26, 2008.

7  12.    Plaintiff returned to CSP-Corcoran on August 26, 2008, and he was immediately taken,
8  along with Dr. Schuster's post-operative orders and discharge instructions, to the prison's
9  treatment and triage area, which functions like an emergency room at a hospital.

10 13.    Plaintiff's post-operative orders dated August 25, 2008, indicated that Plaintiff would
11 receive one to two tablets of Vicodin every four hours for six days, 600 milligrams of Ibuprofen
12 every four hours for twelve days, 250 milligrams of Colace (a stool softener) twice a day for thirty
13 days, and a sitz bath "TID and PRN each BM."

14 14.    The August 26, 2008, discharge instructions indicated that Plaintiff was prescribed
15 Vicodin, Ibuprofen, Colace, and a sitz bath "3x day and as needed after each" bowel movement.

16 15.    Plaintiff did not receive Vicodin at CSP-Corcoran because it was substituted with Tylenol
17 III. Plaintiff was also given Colace.

18 16.    Plaintiff received a sitz bath basin on August 27, 2008.

19 17.    The purpose of soaking in a sitz bath basin after hemorrhoid surgery is to keep the surgical
20 site clean and to relieve the discomfort associated with itchiness and the sensation of tightness.[6]

21 18.    Use of a sitz bath basin does not speed up the recovery process or accelerate healing of the
22 surgical wound.

23 19.    Soaking in a sitz bath basin is not a necessary element of a patient's recovery, but an
24 adjunctive measure provided to help soothe patients and calm them down.

25 20.    On September 1, 2008, Defendant told Plaintiff that his prescription for the sitz bath basin
26 had expired, and she required him to relinquish the basin.

---

28 [6] Plaintiff may not offer his own lay opinion that the sitz bath treatment described in this fact applies only to treatment for post-surgical removal of external hemorrhoids. Fed. R. Evid. 701, 702.

7

21. On September 3, 2008, Plaintiff submitted a health care services request form and asked that he be given another sitz bath basin.

22. In the request form, Plaintiff stated that his sitz bath basin had been taken from him because an LVN mistakenly misinterpreted the surgeon's order.

23. On September 4, 2008, Plaintiff's prescription for a sitz bath basin was reviewed and he was prescribed another basin.

24. Plaintiff received a sitz bath basin on September 5, 2008.

### C. Legal Standard

The Eighth Amendment's prohibition against cruel and unusual punishment protects prisoners not only from inhumane methods of punishment but also from inhumane conditions of confinement. *Morgan v. Morgensen*, 465 F.3d 1041, 1045 (9th Cir. 2006) (citing *Farmer v. Brennan*, 511 U.S. 825, 847, 114 S.Ct. 1970 (1994) and *Rhodes v. Chapman*, 452 U.S. 337, 347, 101 S.Ct. 2392 (1981)) (quotation marks omitted). While conditions of confinement may be, and often are, restrictive and harsh, they must not involve the wanton and unnecessary infliction of pain. *Morgan*, 465 F.3d at 1045 (citing *Rhodes*, 452 U.S. at 347) (quotation marks omitted).

Prison officials have a duty to ensure that prisoners are provided adequate shelter, food, clothing, sanitation, medical care, and personal safety, *Johnson v. Lewis*, 217 F.3d 726, 731 (9th Cir. 2000) (quotation marks and citations omitted), but not every injury that a prisoner sustains while in prison represents a constitutional violation, *Morgan*, 465 F.3d at 1045 (quotation marks omitted). To maintain an Eighth Amendment claim, inmates must show deliberate indifference to a substantial risk of harm to their health or safety. *E.g.*, *Farmer*, 511 U.S. at 847; *Thomas v. Ponder*, 611 F.3d 1144, 1151-52 (9th Cir. 2010); *Foster v. Runnels*, 554 F.3d 807, 812-14 (9th Cir. 2009); *Morgan*, 465 F.3d at 1045; *Johnson*, 217 F.3d at 731; *Frost v. Agnos*, 152 F.3d 1124, 1128 (9th Cir. 1998).

For claims arising out of medical care in prison, Plaintiff "must show (1) a serious medical need by demonstrating that failure to treat [his] condition could result in further significant injury or the unnecessary and wanton infliction of pain," and (2) that "the defendant's response to the need was deliberately indifferent." *Wilhelm v. Rotman*, 680 F.3d 1113, 1122 (9th Cir. 2012)

(citing *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006)). The existence of a serious medical need is the objective element of an Eighth Amendment claim and deliberate indifference is the subjective element. *Snow v. McDaniel*, 681 F.3d 978, 985 (9th Cir. 2012)

### D. Findings[7,8]

#### 1. Objective Element – Serious Medical Need

Indications of a serious medical need are (1) the existence of an injury that a reasonable doctor would find important and worthy of comment or treatment, (2) the presence of a medical condition that significantly affects an individual's daily activities, and/or (3) the existence of chronic or substantial pain. *Snow*, 681 F.3d at 982-85 (objectively serious medical need existed where prisoner who needed double hip replacement surgery endured a years-long delay and his degenerated condition caused him excruciating pain and rendered him barely able to walk); *Wilhelm*, 680 F.3d at 1122 (hernia constituted objectively serious medical need where it caused the prisoner pain and he endured an approximately 4 year delay before receiving necessary surgery); *Lopez v. Smith*, 203 F.3d 1122, 1131 (9th Cir. 2000) (objectively serious medical need existed where prisoner's broken jaw was wired shut for months, affecting his ability to eat and likely causing him pain) (quotation marks omitted); *see also McGuckin v. Smith*, 974 F.2d 1050, 1059-62 (9th Cir. 1992), *overruled on other grounds by WMX Techs., Inc. v. Miller*, 104 F.3d 1133, 1136 (9th Cir. 1997) (en banc)) (objectively serious medical need existed where prisoner endured a more than 3 ½ year delay in receiving back surgery for "dramatic" condition "constituting massive herniation" of inmate's back and upper torso, which caused inmate extreme, increasing pain which was successfully treated by the surgery); *Hunt v. Dental Dept.*, 865 F.2d 198, 200 (9th Cir. 1989) (objectively serious medical need existed where prisoner went more than 3 months

---

[7] The Court's findings are confined to those issues which are material, and the parties should not construe the omission of discussion on other issues as an indication the Court overlooked the argument.

[8] Defendant's objections to Plaintiff's prison records for lack of authentication are overruled. Fed. R. Evid. 901(b)(4); *Las Vegas Sands, LLC v. Nehme*, 632 F.3d 526, 532-33 (9th Cir. 2011); *see also Chamberlain v. Les Schwab Tire Center of California, Inc.*, No. 2:11-cv-03105-JAM-DAD, 2012 WL 6020103, at *2 (E.D. Cal. Dec. 3, 2012) (citing *Burch v. Regents of Univ. of California*, 433 F.Supp.2d 1110, 1120 (E.D. Cal. 2006)) (rejecting "purely procedural" authentication objection). Defendant's objections to prison records as hearsay are also overruled. Fed. R. Evid. 803(b)(6). However, Defendant's hearsay objections to the statements documented in those records, such as T. Lau's hearing testimony, are sustained. Fed. R. Evid. 802. The exception is Defendant's statements, which are not hearsay. Fed. R. Evid. 801(D)(2)(A).

without his dentures, resulting in severe pain, bleeding gums, broken and permanently damaged teeth, and weight loss due to inability to eat properly); *Doty v. County of Lassen*, 37 F.3d 540, 546 n.3 (9th Cir. 1994) (no objectively serious medical need where prisoner suffered from nausea, shakes, headache, and depressed appetite due to unresolved family stress).

A painful condition necessitating surgical intervention will almost certainly rise to the level of an objectively serious medical need, and Defendant does not suggest that Plaintiff's pre-surgical condition was not a serious medical need or that Plaintiff did not require any post-surgical care. However, post-surgery, Plaintiff was treated with pain medication, a stool softener, and sitz baths for seven days, and Defendant argues that Plaintiff's condition on September 1, 2008, did not constitute an objectively serious medical need requiring the use of a sitz bath basin.

There is no dispute that a hemorrhoidectomy causes all patients pain, and Dr. Enenmoh attested that the pain is sharp and constant for 24 to 48 hours following surgery and usually gradually decreases each day thereafter. (Enenmoh Dec., ¶¶5, 9.) Patients typically deal with fecal impaction (constipation), bleeding, itchiness, and pain; and the passage of hard stool can injury the soft tissue at the surgical site and impair the healing of the wound, leading to delayed recovery and persistent pain. (*Id.*, ¶¶4, 6.) Further, patients' pain following hemorrhoid surgery is addressed with oral narcotics and/or non-steroidal anti-inflammatory drugs. (*Id.*, ¶5.) Whether sitz baths are prescribed depends on the surgeon's pattern of practice, but when prescribed, they are intended to keep the surgical site clean and relieve the discomfort associated with itchiness and the sensation of tightness; they are intended to be soothing to patients and are not necessary to the patient's recovery. (*Id.*, ¶¶7, 8.)

Plaintiff had surgery on August 25, 2008, and Dr. Schuster's post-operative orders included sitz baths three times a day as needed. Plaintiff received the sitz bath basin for use on August 27, 2008, two days post-surgery, and he was required to relinquish the basin on September 1, 2008, which was seven days post-surgery. Plaintiff was prescribed another sitz bath basin on September 4, 2008, after he filed an inmate appeal and Dr. Schuster's order was reviewed. Plaintiff received the basin the next day.

Plaintiff attested that he had chronic problems with internal and external hemorrhoids which caused him pain, itching, and bleeding, and which were significant enough, pre-surgery, to have required him to push protruding internal hemorrhoids back inside his rectum following a bowel movement; and that his surgery on August 25, 2008, was his third and final hemorrhoid surgery.[9] (Spinks Dec., ¶¶5, 6.) Plaintiff experienced pain following surgery, which the parties agree is a universal consequence of undergoing a hemorrhoidectomy; and he experienced bleeding and constipation, which the parties agree are also typical.[10] Due to the one-day delay in obtaining the sitz bath basin, Plaintiff attested that he refrained from eating solid food for forty-eight hours due his anticipation of pain in the absence of a sitz bath.[11] (Spinks Dec., ¶17.) In addition, Plaintiff attested that sitz baths helped with the pain and bleeding he experienced. (Spinks Dec., ¶¶28, 58.)

The Court accepts as true that sitz baths eased Plaintiff's pain and bleeding, and aided him with bowel movements, as Plaintiff attested. However, the issue is whether Plaintiff's condition constituted an objectively serious medical need requiring sitz bath treatment, and Defendant has submitted evidence that Plaintiff was one week post-surgery, which was passed the point when a patient would be expected to experience increased pain as a result of not having sitz baths and passed the point it should impede recovery. Furthermore, Plaintiff's post-surgical protocol included pain medication and a stool softener, and Plaintiff went without the sitz bath basin for a short period of time: from September 1, 2008, to September 5, 2008.

The Court is confined to determining whether there exist any triable issue of fact, *Thomas*, 611 F.3d at 1150, and under these circumstances, the Court finds that Plaintiff did not have an objectively serious medical need such the short term deprivation of the sitz bath basin supports a

---

[9] Defendant objects to Plaintiff offering his lay opinion on issues which require medical expertise. Fed. R. Evid. 701, 702. Plaintiff's general history of hemorrhoids, his observable past symptoms, and the fact of his surgeries, however, are issues of which he would have personal knowledge and which do not require medical expertise.

[10] Plaintiff may testify that he was experiencing post-surgical pain. Fed. R. Evid. 701. He may not offer his lay opinion that he was experiencing post-surgical complications or that his medical condition was caused or exacerbated by various medications. Fed. R. Evid. 702.

[11] Given Plaintiff's history of chronic hemorrhoid problems and two previous hemorrhoid surgeries, Defendant's objection to this statement as speculative is overruled.

11

claim under the Eighth Amendment.  There is no admissible evidence that Plaintiff suffered further significant injury as a result of the short term deprivation of the sitz bath basic, or that, in light of Dr. Enemoh's medical testimony regarding (1) the purpose of sitz baths, (2) the optional use of sitz baths depending on the surgeon's practice, and (3) the post-surgical point at which Plaintiff went without the basin, the deprivation of a sitz bath basin for a period of four days rose to the level of unnecessary and wanton infliction of pain.  *Wilhelm*, 680 F.3d at 1122.

However, even if the Court were to assume that Plaintiff had an objectively serious medical need necessitating sitz baths, Defendant's actions do not support a claim of deliberate indifference.

### 2.  **Subjective Element – Deliberate Indifference**

Deliberate indifference is shown by "(a) a purposeful act or failure to respond to a prisoner's pain or possible medical need, and (b) harm caused by the indifference."  *Wilhelm*, 680 F.3d at 1122 (citing *Jett*, 439 F.3d at 1096).  The requisite state of mind is one of subjective recklessness, which entails more than ordinary lack of due care.  *Snow*, 681 F.3d at 985 (citation and quotation marks omitted); *Wilhelm*, 680 F.3d at 1122.  "Deliberate indifference is a high legal standard," *Toguchi v. Chung*, 391 F.3d 1051, 1060 (9th Cir. 2004), and "[u]nder this standard, the prison official must not only 'be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists,' but that person 'must also draw the inference,'" *Toguchi*, 391 F.3d at 1057 (quoting *Farmer*, 511 U.S. at 837).  "'If a prison official should have been aware of the risk, but was not, then the official has not violated the Eighth Amendment, no matter how severe the risk.'"  *Id.* (quoting *Gibson v. County of Washoe, Nevada*, 290 F.3d 1175, 1188 (9th Cir. 2002)).

In this case, it is undisputed that having a sitz bath basin in prison requires a doctor's order, the duration of the sitz bath prescription is dictated by the doctor's order, and Defendant did not have the authority to change the doctor's order.  While Plaintiff asserts the existence of a dispute over whether Defendant inadvertently misread his prescription, he relies on what amounts to nothing more than his characterization of Defendant's response to his question at his RVR hearing, a characterization which is not reasonable and which is directly contradicted by his own

evidence submitted under penalty of perjury.[12] ("Plaintiff's Admission and Denial and Exception to Defendant's Statement of Undisputed Facts," p. 5, no. 22; Spinks Dec., ¶49; Pl. Ex. B-37.) Given the ambiguous phrasing of the question, which would have required Defendant to admit she made a "serious mistake" if she answered affirmatively, Defendant's negative response does not support a reasonable inference that she denied acting based on a misinterpretation of the doctor's order.

To the contrary, the record is replete with evidence that Defendant required Plaintiff to return to sitz bath basin because she believed the doctor's order for sitz baths had expired; her motivation in demanding the return of the basin is supported by Plaintiff's complaint, by Plaintiff's declaration, and by Plaintiff's and Defendant's statements made in relation to the RVR, in addition to Defendant's own declaration. As a result, the Court finds that there is no admissible evidence raising a triable issue of fact regarding Defendant's motivation: she demanded Plaintiff return the sitz bath basin because she believed the doctor ordered sitz baths for three days and the three-day period had expired.

There is also no dispute that Defendant was incorrect about the doctor's order, which was for sitz baths three times a day and which had not expired by September 1, 2008. Plaintiff's frustration with Defendant's misinterpretation of the doctor's order was understandable.

Likewise, Defendant's frustration with Plaintiff's initial refusal to comply with her directive was understandable. Prison employees face the "unenviable task of keeping dangerous men in safe custody under humane conditions." *Farmer*, 511 U.S. at 844-45. Plaintiff's own description of events shows that he was less than respectful toward Defendant and that in returning the basin, he threw it down, at which point it bounced off the wall and hit Defendant in the foot.[13]

Regardless of either party's understandable frustration with the other, however, Defendant did not possess the requisite subjective mental state to support a claim of deliberate indifference against her. Plaintiff's right to have the basin for sitz baths rested exclusively with the doctor's order and Defendant acted based on her misinterpretation of that order. To the extent that

---

[12] *E.g.*, Comp., ¶¶28, 33, 36, 39; Spinks Dec., ¶19, 23, 26, 27, 29; Pl. Ex. B-39, B-51.

[13] Comp., ¶40, 45; Spinks Dec., ¶¶19, 26, 29, 30, 34; Pl. Ex. B-51; *see also* Opp Brief, 4:8-13 & 5:9-6:3.

13

Defendant could have yielded to Plaintiff's requests to double check the doctor's order or that she was unmoved by Plaintiff's plea to keep the basin one more day until the matter could be straightened out, ordinary lack of due care does not suffice to support a claim of deliberate indifference. *Snow*, 681 F.3d at 985; *Wilhelm*, 680 F.3d at 1122. (Compl., ¶¶38, 39.) Accordingly, the Court finds that Defendant is entitled to summary judgment on the subjective element of Plaintiff's Eighth Amendment claim.[14]

### V.     Conclusion and Recommendation

For the reasons set forth above, the Court HEREBY RECOMMENDS that:

1.     Plaintiff's motion for the appointment of an expert witness, filed on November 18, 2013, be DENIED; and

2.     Defendant's motion for summary judgment, filed on July 31, 2013, be GRANTED, thus concluding this action in its entirety.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l). Within **twenty-five (25) days** after being served with these Findings and Recommendations, the parties may file written objections with the Court. Local Rule 304(b). The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any response to the objections must be filed within **ten (10) days** from the date of service of the objections. Local Rule 304(d). The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated:     **February 3, 2014**                             /s/ Sheila K. Oberto
                                                                   UNITED STATES MAGISTRATE JUDGE

---

[14] In light of this finding, the Court does not reach the issue of whether the deprivation caused Plaintiff further harm. The Court notes, however, that the needless suffering of pain may be sufficient to demonstrate further harm. *Clement v. Gomez*, 298 F.3d 898, 904 (9th Cir. 2002).